THE PEOPLE *ex rel.* JAMES E. RYAN, Plaintiff-Appellant, v. ARTHUR DAVIES *et al.*, Defendants-Appellees.

Third District    Nos. 3—99—0346, 3—99—0401 cons.

Opinion filed April 27, 2000.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and Jerald S. Post (argued), Assistant Attorney General, of counsel), for appellant.

Richard L. Whitman, Sr. (argued), of Stansell, Whitman & Baber, of Monmouth, for appellees.

JUSTICE BRESLIN delivered the opinion of the court:

The State filed suit against defendants, Arthur and Margaret Davies and Forest Gittings, to recover $9,938.58 in cleanup costs spent by the Environmental Protection Agency (Agency) to remove 5,000 to 6,000 tires on the Davieses' property. The trial court found that section 55.3 of the Environmental Protection Act (Act) (415 ILCS 5/55.3 (West 1998)), which allows the State to clean up waste tire accumula-

tions and recover costs against the owners of the tires, could not be retroactively applied to the Davieses and that the Davieses were not owners or operators of the tires under the Act. The court granted a motion by the Davieses for summary judgement and the State appeals. We reverse and hold that section 55.3 of the Act may be utilized to recover the cost of removing waste tire accumulations being presently maintained in violation of the Act.

## FACTS

The Davieses allowed Gittings, who was involved in a tire service repair business, to deposit 5,000 to 6,000 used tires in a ravine on their property sometime prior to August of 1989. After inspecting the property in December of 1994, the Agency issued an "Administrative Warning Notice" to the Davieses and Gittings demanding that they stop the dumping and remove all tires. The notice required the defendants to submit a tire removal agreement to the Agency and to sign a letter of commitment to undertake and complete the tire removal.

Arthur Davies sent a letter to the Agency requesting more time to remove the tires. In the letter, he indicated that there was no law against using the tires as an erosion control device when he allowed Gittings to deposit the tires in the ravine in 1984. Although the Davieses removed the tires from the ravine, they merely stacked them elsewhere on their property. Therefore, in compliance with section 55.3 of the Act, an Agency contractor removed the tires at a total cost to the State of $9,938.58.

When the State filed a complaint in the circuit court to recover the cost of the tire removal, the Davieses answered that they allowed Gittings to dump the tires on their property in 1984 and that no dumping had occurred after August 31, 1989, the effective date of Title XIV of the Act, which includes section 55.3. 415 ILCS 5/55.3 (West 1998). The Davieses admitted in their answer to the State's complaint that they were using the tires as an erosion control device.

The Davieses also filed a motion for summary judgment, claiming that they were neither the owners nor the operators of the tire accumulation as those terms are defined under the Act. In response, the State submitted the letter from the Davieses in which Arthur had indicated that the tires were being used to stop erosion.

The court issued summary judgment on behalf of the defendants because it found that section 55.3 could not be retroactively applied to the Davieses. The court also found that the Davieses were not the owners or operators of the tire accumulation. The State now appeals.

## ANALYSIS

On appeal, the State argues that the trial court erred in determin-

ing that section 55.3 of the Act may not be utilized to recover cleanup costs from the Davieses because such an application of the Act would be impermissibly retroactive. This analysis concerns a question of law, which we review *de novo*. *E&E Hauling, Inc. v. Ryan*, 306 Ill. App. 3d 131, 713 N.E.2d 178 (1999).

■ Section 55.3 of the Act allows the Illinois Environmental Protection Agency to remove used and waste tire accumulations from any private or public property upon a finding that the accumulation creates a hazard to public health or the environment. 415 ILCS 5/55.3(b)(3), (e) (West 1998). The "owner or operator" of any accumulation is liable for the costs incurred by the Agency in removing the tires. 415 ILCS 5/55.3(g) (West 1998).

The Davieses argue, and the trial court agreed, that they are not liable for the cost of cleanup under the Act because the tires were dumped prior to the date when section 55.3 was enacted. The State contends that the Act is not being retroactively applied because it was subsequent to the enactment of the Act that (1) the threat to the environment existed from the accumulation of tires; (2) the Agency entered on the Davieses' property and removed the tires; and (3) the State initiated the current litigation to recover costs.

■ The Illinois Supreme Court has defined a retroactive change in the law as one that takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability with respect to transactions or considerations already past. *First of America Trust Co. v. Armstead*, 171 Ill. 2d 282, 664 N.E.2d 36 (1996). A general rule of statutory construction in Illinois, founded upon constitutional provisions that guarantee due process of law, requires that an amendatory act be construed as prospective only. *Chemrex, Inc. v. Pollution Control Board*, 257 Ill. App. 3d 274, 628 N.E.2d 963 (1993).

But the presumption of prospectivity is rebuttable by express statutory language to the contrary or by necessary implication. *Rivard v. Chicago Fire Fighters Union, Local No. 2*, 122 Ill. 2d 303, 522 N.E.2d 1195 (1988). The United States Supreme Court has stated that courts must effectuate legislative intent regarding retroactivity and that, even absent explicit statutory language mandating retroactivity, laws may be applied retroactively if courts are able to discern "clear congressional intent favoring such a result." *Langraf v. USI Film Products*, 511 U.S. 244, 245, 128 L. Ed. 2d 229, 240-41, 114 S. Ct. 1483, 1487 (1994).

■ Turning to the Act, we find that it does not specifically mandate that it is to be applied retroactively; however, the section of the Act that describes its purpose indicates that the legislature has found used

tire accumulations to be a considerable health and environmental hazard. Specifically, the legislature found:

"(1) that used and waste tires constitute a growing solid waste problem of considerable magnitude that is exacerbated by the fact that tires do not readily degrade or decompose;

(2) that the accumulation of used and waste tires constitutes a fire hazard and a threat to air and water quality;

(3) that unmanaged used and waste tire sites encourage open dumping of other types of waste;

(4) that used and waste tire accumulations pose a threat to the public health, safety and welfare by providing habitat for a number of disease-spreading mosquitoes and other nuisance organisms, and that the transport of used tires has introduced such mosquitoes into the State and dispersed them." 415 ILCS 5/53 (West 1998).

The legislature further found that state agencies need the ability to remove the used and waste tires in order to protect against hazards to public health and the environment. 415 ILCS 5/53(a)(5) (West 1998). It logically follows that the legislature intended to allow the Agency to clean up all tire accumulations, not just those arising after 1989, if it was to be successful in eliminating the hazard.

The legislative history of section 55.3 supports this interpretation of the Act. Representative Wennlund indicated that the Act "will provide for the collection and shredding of thirty million tires which are now on the public grounds in Illinois." 86th Ill. Gen. Assem., House Proceedings, June 30, 1989, at 130. Senator Welch similarly indicated that the Act is "an attempt to get at all the tires that are accumulating around the State." 86th Ill. Gen. Assem., Senate Proceedings, June 30, 1989, at 109.

This language supports a finding that the legislature intended the Act to apply to tire accumulations created both prior to 1989 and after 1989. Indeed, in light of the serious threat to the environment and the health of the community resulting from the accumulation of used tires, an opposite reading of the Act would be absurd.

In addition to this legislative evidence of the Act's retroactive intent, we find support for the State's position in analogous cases. For instance, in *People v. Jones*, 329 Ill. App. 503, 69 N.E.2d 522 (1946), the defendant argued that he could not be fined under a statute that made it a nuisance to permit an oil well to be unplugged, because he drilled and abandoned the well prior to the enactment of the statute. The court stated that a law is not unconstitutional simply because it provides for a penalty for the continued maintenance of certain conditions that, prior to the enactment of the statute, were lawful. Thus, the defendant was not prosecuted for anything he did prior to the

enactment of the nuisance statute; he was prosecuted for permitting the well to remain unplugged after the enactment of the statute. *Jones*, 329 Ill. App. at 507, 69 N.E.2d at 524.

The *Jones* court relied on *Chicago & Alton R.R. Co. v. Tranbarger*, 238 U.S. 67, 59 L. Ed. 1204, 35 S. Ct. 678 (1915). In *Tranbarger*, the plaintiff contended it had no duty to comply with a statute requiring railroads to construct transverse openings in roadways for drainage, because its tracks had been laid prior to the enactment of the statute. The Court disagreed, stating the following:

> "[The] plaintiff in error is subjected to a penalty not because of the manner in which it originally constructed its railroad embankment, nor for anything else done or omitted before the passage of the act of 1907, but because after that time it maintained the embankment in a manner prohibited by that act." *Tranbarger*, 238 U.S. at 73, 59 L. Ed. at 1209, 35 S. Ct. at 680.

So too, here, the Agency is not claiming that the Davieses illegally allowed the tires to accumulate on their property. Instead, they are claiming that the Davieses are currently maintaining the accumulation in a manner prohibited by the Act.

For these reasons we conclude that section 55.3 of the Act need not be retroactively applied to owners in order for the State to recover cleanup costs for a present violation of the Act.

■ Next, we must decide whether the trial court erred in granting the Davieses' motion for summary judgment in light of its finding that the Davieses are not owners or operators of the tire accumulation within the meaning of the Act.

A motion for summary judgment is properly granted only when the pleadings, depositions, admissions and affidavits on file show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Machinery Transports of Illinois v. Morton Community Bank*, 293 Ill. App. 3d 207, 687 N.E.2d 533 (1997). An appellate court performs its review of a summary judgment order *de novo*. *Container Corp. v. Wagner*, 293 Ill. App. 3d 1089, 689 N.E.2d 259 (1997).

In this case, the court did not elaborate upon its finding that the Davieses are not owners or operators of the tire accumulation, but only briefly noted that the Davieses "do not fit the definition of operator or owner." We find this statement troubling in light of the fact that section 54 of the Act, while defining several words for the purposes of the Act, fails to define either the word "owner" or the word "operator."

While the Davieses contend in their affidavits accompanying their motion for summary judgment that they do not own the tires nor have they ever exercised any control over the tires, they have previously

indicated several times that they were using the tires as an erosion control device. For instance, in a letter to the Agency, the Davieses noted that when the tires were placed in the ravine there was no law stating they could not use the tires for conservation purposes to stop erosion. The Davieses also admitted in their answer to the State's complaint that the tires were placed in the ravine for erosion control purposes; however, the Davieses later denied that allegation in their answer to Gittings' counterclaim against them.

The State argues that, as an erosion control device, the tires became an improvement or fixture, making them the real property of the Davieses. See *In re Tax Objections of Hutchens*, 34 Ill. App. 3d 1039, 341 N.E.2d 169 (1976). The Davieses counter with the argument that the State failed to provide any counteraffidavits indicating the Davieses were the owners of the tires and, as a result, no genuine issue of fact remains. The Davieses contend that a material issue is not created simply by the pleading of a fact, but that it must be supported by sworn counteraffidavits.

In *Zannis v. Lake Shore Radiologists, Ltd.*, 104 Ill. App. 3d 484, 487, 432 N.E.2d 1108, 1110 (1982), the court stated that if purported issues of material fact raised by the opponent to a motion for summary judgment "are not further supported by evidentiary facts through affidavits or other evidence, summary judgement is then appropriate." Here, the record reveals that the Davieses have twice indicated that they were using the tires as an erosion control device. We consider this "other evidence" supporting the pleadings.

Thus, we find that the issue of who owns the tires, the Davieses or Gittings, is a question that should not have been determined pursuant to a summary judgement motion. Genuine issues of material fact still exist. Accordingly, we find that the trial court erred when it granted summary judgment in favor of the Davieses.

For the foregoing reasons, the judgment of the circuit court of Will County is reversed and this cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

KOEHLER and LYTTON, JJ., concur.