THIRD DIVISION
June 30, 2008

No. 1-06-1939

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| | ) | the Circuit Court |
| Plaintiff-Appellee, | ) | of Cook County. |
| | ) | |
| v. | ) | No. 04 CR 836 |
| | ) | |
| HAROLD JENKINS, | ) | Honorable |
| | ) | Lawrence P. Fox, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE THEIS delivered the opinion of the court:

Following a jury trial, defendant Harold Jenkins was convicted of one count of aggravated possession of stolen firearms (720 ILCS 5/16-16.1 (West 2004)) and two counts of possession of a stolen firearm (720 ILCS 5/16-16 (West 2004)) and was sentenced to four years' imprisonment. On appeal, defendant claims that his convictions should be reversed because (1) the indictment was barred by the statute of limitations; (2) the statutes under which he was convicted are *ex post facto* laws because they impermissibly criminalize conduct and increase penalties for offenses that occurred before their enactment; (3) the trial court erred in excluding testimony of defense witnesses; and (4) the trial court erred in instructing the jury on the elements of the offenses. Alternatively, defendant argues that his trial counsel was ineffective for failing to request the proper jury instructions. For the following reasons, we affirm.

Defendant is a former lieutenant with the Maywood Police Department. As a condition of bond in another criminal case, defendant was ordered to surrender all of his weapons to Joseph Thomas of the Illinois Attorney General's firearms unit. On September 26, 2002, Thomas seized 21 weapons from defendant's home, including a.357-caliber Marlin rifle and a .45-caliber Ruger pistol. All of the guns were inventoried and their serial numbers traced to discover their original purchasers, according to standard protocol. The Marlin rifle was originally purchased by Horace Reedy and the Ruger pistol was originally purchased by Jason Taylor. When he was a Maywood police officer, defendant arrested both men for weapons violations and confiscated these particular weapons as a result of the arrests.

Defendant was indicted by a grand jury on January 8, 2004, and charged with two counts of possession of a stolen firearm and one count of aggravated possession of not less than two, but not more than five, stolen firearms. Defendant filed a motion to dismiss the indictment, arguing that the statute of limitations on these possession offenses had expired. According to defendant, the limitations periods began to run when defendant acquired the stolen firearms. Defendant argued that the State failed to allege when the guns were acquired, but the circumstantial evidence indicates that they were acquired well beyond the limitations period. Furthermore, possession offenses have not been designated by the legislature as continuing offenses, which designation would have extended the limitations period. The court denied defendant's motion.

The State's theory of the case was that defendant acquired these weapons from the evidence locker at the Maywood Police Department some time after the criminal prosecutions of Reedy and Taylor, when the guns were no longer needed as evidence. Although defendant was

2

not charged with theft, the State alleged that defendant knew that the Marlin rifle and Ruger pistol found in his home were stolen from the Maywood Police Department.

Defendant sought to introduce testimony of four witnesses, including two former Maywood police chiefs, who would testify generally about the existence of an unwritten policy at the Maywood Police Department allowing officers to take confiscated weapons for their own personal use after the close of the criminal case involving those weapons. The State filed a motion *in limine* to exclude that testimony, arguing that none of these witnesses would testify about when or by whom the policy was created and, thus, the testimony would lack a proper foundation and would be inadmissible hearsay. Moreover, it was irrelevant because none of the witnesses would testify that they personally gave or allowed defendant to take either of the guns at issue in this case. The court barred the witnesses' testimony for the reasons advocated by the State.

The case then proceeded to trial. Officer Anthony Winburn testified that he and defendant arrested Reedy on March 22, 1980, for firing the Marlin rifle while on the back porch of his home. Defendant seized the rifle from Reedy and gave it to Officer Winburn, saying that "it looked like a good gun for hunting." Officer Winburn inventoried the gun and locked it in the evidence locker at the Maywood police station. Officer Winburn did not permit anyone to take the rifle after that point.

Taylor then testified that he lawfully purchased the Ruger pistol on July 23, 1992. That day, Taylor went to the Maywood Police Department to report the theft of a different gun. While there, he was arrested by defendant for a weapons violation that did not involve the Ruger pistol. An hour after he was placed in a holding cell, defendant took Taylor to an interview room

and showed him ten of the handguns that defendant apparently confiscated from Taylor's home while he was in custody, including the Ruger pistol he picked up earlier that day. Taylor said that was the last time he saw the Ruger pistol.

When Taylor returned to the police station several days later to retrieve his weapons, defendant told him that they would not be returned to him because he no longer had a valid Firearm Owner's Identification (FOID) card. On redirect examination, he stated that he did not report any of the confiscated weapons as being stolen because "they [were not] stolen. [Defendant] had them."

Officer Jose Mazieregos also testified that as a lieutenant in the Maywood Police Department's internal investigations division, he investigated alleged police misconduct. He assisted with the Attorney General's investigation of defendant regarding the weapons seized from his home, specifically the Ruger pistol and the Marlin rifle, although he was not asked to elaborate on the nature or results of that investigation. He testified that nobody in the Maywood Police Department gave defendant permission to be in possession of the Ruger pistol or the Marlin rifle that were stored in the evidence locker at the Maywood Police Department.

The defense rested without presenting any evidence. After the court denied defendant's motion for a directed verdict, the parties and the court discussed the jury instructions. After the court read each proposed instruction, the parties were permitted to comment or object. The court indicated that two of the instructions related to possession of a stolen firearm were not Illinois Pattern Jury Instructions (IPI). The State indicated that there were no IPI instructions on that offense. Defense counsel stated, "Judge, it is a non-IPI instruction. It certainly contains the elements that are involved in the indictment. So, I won't object." As to the instruction for

aggravated possession of stolen firearms, defense counsel stated, "This is another non-IPI. I don't have any objection. I believe it states the elements."

After closing arguments, the jury was given the following instruction on possession of a stolen firearm:

"To sustain the charge of possession [of a] stolen firearm[,] the State must prove the following propositions.

First, that the property that the defendant possessed, firearm, to wit; a Ruger model P 890, 45 calibre [sic] pistol, serial No. 66033592.

And [the] second proposition is that when the defendant did so[,] he was not entitled to possess said firearm.

And [the] third proposition is, that the defendant knew said firearm was stolen.

If you find from your consideration [of] all evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty.

If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty."

The same instruction was given with respect to the Marlin rifle. The jury was also instructed that "Possession may be actual or constructive. A person has actual possession when he has immediate or exclusive control over a thing." The court also instructed the jury on the definitions of "constructive possession" and "firearm."

The court then read the following instruction:

"To sustain the charge of aggravated possession [of] stolen firearm[s,] the State must prove the following propositions.

First proposition, that the defendant possessed two firearms, to wit; a Ruger model 980, 45, pistol serial No. 66033519. And a Marlin model 1894, 357 calibre [sic] rifle, serial number 21191688.

And [the] second proposition is that when the defendant did so[,] he was not entitled to possess said firearm.

And, [the] third proposition, that the defendant knew *** said firearms were stolen. ***

If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty.

If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty."

The jury convicted defendant on all three counts. Defendant filed a motion for a new trial, which was denied. This timely appeal followed.

Defendant first argues that the circuit court erred when it failed to dismiss the indictment as barred by the statute of limitations. He contends that the court erroneously determined that sections 16-16 and 16-16.1 of the Illinois Criminal Code of 1961 (Code) (hereafter, the possession statutes) were "continuing offenses" that extended the three-year limitations period

6

set forth in section 3-5(b) of the Code (720 ILCS 5/3-5(b) (West 2004)). He argues that the State failed to meet its burden of proving that the legislature intended for the possession statutes to be construed as continuing offenses. Because the court's interpretation of a statute was the basis for denying dismissal, we apply a *de novo* standard of review. People v. Jones, 223 Ill. 2d 569, 580, 861 N.E.2d 967, 974 (2006).

Section 3-5(b) of the Code provides that "a prosecution for any offense *** must be commenced within 3 years after the commission of the offense if it is a felony ***." 720 ILCS 5/3-5(b) (West 2004). To determine whether the indictment was brought within the limitations period, we first must determine when the crimes of possession of a stolen firearm and aggravated possession of stolen firearms were "committed."

Initially, we note that this is a case of first impression. Neither of the possession statutes have been construed by any Illinois court. Thus, we begin our analysis by examining the language of the possession statutes, which is "the surest and most reliable indicator of the legislature's intent." People v. Hudson, 228 Ill. 2d 181, 191, 886 N.E.2d 964, 971 (2008).

Section 16-16(a) of the Code provides that "[a] person commits possession of a stolen firearm when he or she, not being entitled to the possession of a firearm, possesses or delivers the firearm, knowing it to have been stolen or converted." 720 ILCS 5/16-16(a) (West 2004). Section 16-16.1(a)(1) of the Code provides that "[a] person commits aggravated possession of a stolen firearm when he or she *** not being entitled to the possession of not less than 2 and not more than 5 firearms, possesses or delivers those firearms at the same time or within a one year period, knowing the firearms to have been stolen or converted." 720 ILCS 5/16-16.1(a)(1)

1-06-1939

(West 2004). Because this excerpted language of the possession statutes is virtually identical, our discussion below applies to both statutes.

Defendant argues that the possession crimes are "committed" at the time of the original theft of the stolen firearms. He contends that his position is bolstered by the fact that the possession statutes are contained within article 16 of the Code, which governs theft. Specifically, the possession statutes should be construed *in pari materia* with section 16-1 of the Code governing the offense of theft, which is considered to have been committed at the time of the actual taking and is not considered a "continuing offense." See People v. Kimbro, 182 Ill. App. 3d 572, 538 N.E.2d 826 (1989); People v. Steinmann, 57 Ill. App. 3d 887, 373 N.E.2d 757 (1989). Additionally, he cites to the legislative history of the possession statutes to support his argument.

Prior to the enactment of the possession statutes in 2000, section 16-1(a)(4) of the Code would have governed the offense of possession of stolen firearms. Section 16-1(a)(4) provides that "[a] person commits theft when he knowingly [o]btains control over stolen property knowing the property to have been stolen or under such circumstances as would reasonably induce him to believe the property was stolen." 720 ILCS 5/16-1(a)(4) (West 2004). The Code defines the phrase "obtains or exerts control" over property as including "the taking, carrying away, or the sale, conveyance, or transfer of title to, or interest in, or possession of property." 720 ILCS 5/15-8 (West 2004).

However, the legislature amended article 16 of the Code in 2000 to create the two new possession statutes, which contain language different from and more specific than those contained in section 16-1(a)(4). When the legislature uses certain language in one part of a

8

statue and different language in another, we may assume different meanings were intended. Hudson, 228 Ill. 2d at 193, 886 N.E.2d at 972. Here, the legislature isolated the specific offense of "possession" from the broader prohibition against "the taking, carrying away, or the sale, conveyance, or transfer of title to, or interest in, or possession of" any type of stolen property. The legislature also isolated the possession of a specific type of stolen goods. Rather than prohibiting the possession of any type of stolen goods, sections 16-16 and 16-16.1 prohibit only the possession of stolen firearms. Thus, we must determine the legislature's intent in creating a specific prohibition against the possession of one or more stolen firearms.

In the absence of a definition supplied by the statute itself, the words of the statute must be given their plain and ordinary meaning. People v. Pierce, 226 Ill. 2d 470, 476, 877 N.E.2d 408, 410 (2007). However, we must also construe statutes consistently and in their proper context. People v. Trainor, 196 Ill. 2d 318, 332, 752 N.E.2d 1055, 1063 (2001). Where a word is used in different sections of the same statute, that word is presumed to have the same meaning throughout the statute, unless a contrary legislative intent has been clearly expressed. People v. Maggette, 195 Ill. 2d 336, 349, 747 N.E.2d 339, 347 (2001). Thus, we must look to the definition of a term as it is used elsewhere in the same section.

A defendant violates sections 16-16 and 16-16.1 when he "possesses" firearms he knows to have been stolen. The Code does not specifically define the term "possession." However, according to Black's Law Dictionary, "to possess" means "to have in one's actual control; to have possession of." Black's Law Dictionary 1183 (7th ed. 1999). Similarly, "possession" is defined as "the continuing exercise of a claim to the exclusive use of a material object." Black's

9

Law Dictionary 1183 (7th ed. 1999). The plain and ordinary meaning of possession connotes the continuing, uninterrupted act of retaining an object in one's control or custody.

Moreover, this court previously has held that under section 16-1, "unauthorized possession need not begin on the day of the original theft but may be shown by possession at the time of the arrest." People v. Helm, 10 Ill. App. 3d 643, 646, 295 N.E.2d 78, 80 (1973) (explaining that a defendant could be found guilty of theft for merely being in possession of a car that was reported stolen while he was incarcerated). Accord People v. Quick, 15 Ill. App. 3d 300, 302, 304 N.E.2d 143, 145 (1973). Accordingly, the legislature could only have intended for the possession statutes to prohibit the continuing, uninterrupted act of retaining stolen firearms in one's control or custody, regardless of when they were acquired. Moreover, a possession crime is "committed" at the time of the offender's arrest, not at the time of the original theft. See Helm, 10 App. 3d at 646, 295 N.E.2d at 80.

In this case, because the possession crimes were "committed" when defendant was arrested on September 26, 2002, the statute of limitations period began to run on that date. There is no dispute that the indictment was filed on January 8, 2004, within 3 years of defendant's arrest. Therefore, the indictment was timely and the circuit court did not err in denying defendant's motion to dismiss.

We reject defendant's argument that the possession crimes were "committed" at the time he acquired the stolen weapons. Defendant relies on Kimbro, 182 Ill. App. 3d at 573, 538 N.E.2d at 827, in support of his position, but that case is distinguishable from the facts before us. In Kimbro, the defendant stole a tractor in 1975 and was arrested for that crime thirteen years later. However, unlike the present case, the defendant was charged with theft under section 16-

1(a)(1) of the Code, which is violated when one knowingly "obtains or exerts unauthorized control over property of the owner." Kimbro, 182 Ill. App. 3d at 573, 538 N.E.2d at 827 (citing Ill. Rev. Stat. Ann. 1987, ch. 38, par. 16-1(a)(1), the wording of which is identical to the current version of the statute, 720 ILCS 5/16-1(a)(1) (West 2004)). Ultimately, the charges against the defendant were dismissed because the court determined that the original theft occurred in 1975; thus, the statute of limitations had run and theft was not considered a "continuing offense" that extended the limitations period. Kimbro, 182 Ill. App. 3d at 573, 538 N.E.2d at 827.

Possession of the stolen tractor was not at issue in Kimbro. If it were, the charge could have been sustained because possession may be established at the time of the arrest and need not have been traced back to the day of the original theft. See Quick, 15 Ill. App. 3d at 302, 304 N.E.2d at 145. Thus, defendant's reliance on Kimbro here is misplaced.

Additionally, both Kimbro and defendant cite to People v. Steinmann, 57 Ill. App. 3d 887, 373 N.E.2d 757 (1989), as authority for the proposition that theft occurs at the time of the taking and is not a continuing offense. However, the defendant in Steinmann also was charged with theft under section 16-1(a)(2) of the Code for "knowingly exert[ing] unauthorized control over" a gun and "depriv[ing] the owner permanently of the use and benefit of said [gun]" by selling it to a third party without the owner's authority, and he was convicted. Steinmann, 57 Ill. App. 3d at 891, 373 N.E.2d at 760.

Aside from the fact that the events in Steinmann were "atypical," and bear little resemblance to the present case, the purported authority relied upon is dicta. Steinmann, 57 Ill. App. 3d at 892, 373 N.E.2d at 760. The court overturned the defendant's conviction because the

evidence was insufficient; it only later discussed the statute of limitations issue in anticipation of further review by the supreme court. Steinmann, 57 Ill. App. 3d at 893, 373 N.E.2d at 761.

Notwithstanding that fact, the court determined that based upon the unique facts of the case and the definition of theft advanced in Helm, the theft could only have occurred once and was not a "continuing offense." Steinmann, 57 Ill. App. 3d at 894, 373 N.E.2d at 762. However, the court did not invoke the Helm court's discussion of the nature of possession because the mere possession of the stolen gun was not at issue. Steinmann, 57 Ill. App. 3d at 894, 373 N.E.2d at 761. Thus, because Steinmann also failed to address possession, it is also inapplicable here.

Defendant committed the possession offenses at the time of his arrest and the indictment was filed within the three-year limitations period for those offenses. Therefore, we need not determine whether the possession statutes should be considered "continuing offenses" that extend the limitations period.

Defendant next argues that the application of section 16-16.1 of the Code in this case violated the prohibition against *ex post facto* laws because it criminalized conduct that was not illegal before January 1, 2000, the effective date of the statute. Moreover, he contends that section 16-16 impermissibly increased the penalty for the offense that was formerly considered possession of stolen property, also an *ex post facto* violation. In response, the State asserts that defendant forfeited the issue. Defendant concedes that the issue was not raised in the court below, but that this court should nevertheless review the issue for plain error.

To preserve an issue for review, the defendant must not only object at trial but also raise the issue before the circuit court in a posttrial motion. People v. Herron, 215 Ill. 2d 167, 175,

1-06-1939

830 N.E.2d 467, 472 (2005), citing People v. Enoch, 122 176, 186, 522 1124, 1130 (1988).

Failure to do so results in forfeiture of review. Herron, 215 Ill. 2d at 175, 830 N.E.2d at 472 .

However, we may review unpreserved errors for plain error when (1) the evidence presented in a criminal case is closely balanced; or (2) the error is so fundamental and of such magnitude that the accused is denied the right to a fair trial and the integrity of the judicial process is undermined. Hudson, 228 Ill. 2d at 191, 886 N.E.2d at 971. In addressing an issue under plain error review, we must first determine whether an error occurred at all. Hudson, 228 Ill. 2d at 191, 886 N.E.2d at 971. To determine whether an alleged error is "plain," we must examine it substantively. Hudson, 228 Ill. 2d at 191, 886 N.E.2d at 971. Thus, we must first consider whether the circuit court erred in applying the possession statutes in this case in violation of the prohibition against *ex post facto* laws.

A law is considered *ex post facto* where it is retroactive, in that it applies to events occurring prior to its enactment, and it is disadvantageous to a defendant. People v. Malchow, 193 Ill. 2d 413, 418, 739 N.E.2d 433, 438 (2000); Toia v. People, 333 Ill. App. 3d 523, 528, 776 N.E.2d 599, 604 (2002). A law is disadvantageous to a defendant if: (1) it punishes as a crime an act previously committed and innocent when done; (2) it makes the punishment for a crime more burdensome after its commission; or (3) it deprives one charged with a crime of any defense available at the time when the act was committed. Malchow, 193 Ill. 2d at 418, 739 N.E.2d at 438; Toia, 333 Ill. App. 3d at 528, 776 N.E.2d at 604.

Here, the possession statutes are not retroactive, and thus, are not *ex post facto* laws. As we have already explained, the crimes of possession of stolen firearms and aggravated possession of stolen firearms are committed at the time of the arrest because the defendant

13

possessed the contraband at the time of the arrest. See Helm, 10 App. 3d at 646, 295 N.E.2d at 80. In this case, defendant was arrested on September 26, 2002, nearly three years after enactment of the possession statutes. The possession statutes were not applied retroactively to events that occurred prior to the enactment of those statutes. Accordingly, the circuit court did not err in applying the possession statutes in this case. Where there was no error, there can be no plain error. Hudson, 228 Ill. 2d at 199, 886 N.E.2d at 975.

Defendant next argues that the circuit court abused its discretion in granting the State's motion *in limine* to preclude four defense witnesses from testifying at trial and thereby denied him the right to present his defense. The court determined that the proffered testimony lacked a proper foundation, was inadmissible hearsay, and was not relevant to the issues in this case.

The circuit court has the inherent authority to admit or exclude evidence, including evidence presented in a motion *in limine*. People v. Bennett, 376 Ill. App. 3d 554, 571, 876 N.E.2d 256, 271 (2007). Generally, a court of review will not disturb the circuit court's ruling on evidentiary issues absent an abuse of discretion, which occurs when the ruling is arbitrary, fanciful or unreasonable, or when no reasonable person would take the same view. Bennett, 376 Ill. App. 3d at 571, 876 N.E.2d at 271.

According to defendant's brief, the four witnesses, all of whom were current or former Maywood police officers, would have testified that the Maywood Police Department had an unwritten policy "allowing guns returned by the court in gun cases to be given to officers for their own use." Defendant then cites to the State's motion *in limine*.

The motion *in limine* indicates that the State received "reports consisting of interviews with [the four defense witnesses] conducted by a defense investigator" and attached copies of

those transcripts to the motion. Specifically, "Exhibit A [of the State's motion *in limine*] consists of the interview with Solomon Smith; Exhibit B consists of the interview with Leon Melton; Exhibit C consists of the interview with James Stenson; [and] Exhibit D consists of the interview with Thomas Duffy." However, those transcripts are not included in the record on appeal, nor did defendant provide us with his written response to the motion *in limine*. Defendant also cites to an alleged offer of proof made by defense counsel at the hearing on the motion *in limine*.

As the appellant in this case, defendant bears the burden of providing this court with a sufficiently complete record of the proceedings below to support his claim of error. Foutch v. O'Bryant, 99 Ill. 2d 389, 391-92, 459 N.E.2d 958, 959 (1984). Absent a complete record on appeal, it will be presumed that the circuit court's order was in conformity with the law and had a sufficient factual basis. Foutch, 99 Ill. 2d at 392, 459 N.E.2d at 959. Any doubts that may arise from the incompleteness of the record will be resolved against the appellant. Foutch, 99 Ill. 2d at 392, 459 N.E.2d at 959.

Neither the hearing transcript nor the State's motion, without exhibits, are sufficient to allow us to review defendant's claim that the court abused its discretion by barring the witnesses' testimony. The alleged offer of proof made by defense counsel at the hearing was nothing more than a restatement of the general claim that the Maywood Police Department had an unwritten policy of giving guns to police officers for their personal use. Nevertheless, it is clear that the court considered additional information in arriving at its decision. The assistant State's attorney made repeated references at the hearing to the contents of the "interview reports," which appear to be the same interview transcripts that should have been included in the

record on appeal as exhibits to the State's motion *in limine*. Additionally, the court remarked that unlike the present case, the witnesses' testimony was "premised on a court case being disposed of." However, defendant provides us with no evidence or explanation of the court case that apparently was integral to the court's evaluation of the testimony. Without a record sufficient to support defendant's claim of error, we must presume that there was an adequate factual basis for the court's decision and that it was made in conformity with the law.

Finally, defendant argues that the circuit court erred in not instructing the jury on the definitions of "stolen property" and "theft" in accordance with the IPI instructions for possession of a stolen motor vehicle (625 ILCS 5/4-103(a)(1) (West 2004)). Illinois Pattern Jury Instructions, Criminal, Nos. 23.35, 23.36 (4th ed. 2000). Specifically, he argues that "the *mens rea* in the [possession of a stolen motor vehicle] statute is identical to that of the offenses with which [defendant] was charged." Therefore, because the applicable instructions for the "most directly analogous" offense were already well-established, the court should have given those instructions here.

Defendant concedes that this instructional issue was not preserved for appeal because he did not raise this issue in the court below, but again urges us to apply the plain error doctrine. The plain error doctrine applies to the review of unpreserved instructional errors. Hudson, 228 Ill. 2d at 191, 886 N.E.2d at 970; 210 Ill. 2d R. 451. Again, however, we must first determine whether error occurred at all where the circuit court instructed the jury pursuant to the non-IPI instructions agreed upon by the parties rather than the IPI instructions for possession of a stolen motor vehicle. See Hudson, 228 Ill. 2d at 191, 886 N.E.2d at 970-71.

Supreme Court Rule 451(a) provides that in criminal cases, the circuit court "shall" use the applicable IPI jury instruction. People v. Hudson, 222 Ill. 2d 392, 399, 856 N.E.2d 1078, 1082 (2006); 210 Ill. 2d R. 451(a). However, if there is no IPI instruction governing a particular criminal charge, the court has the discretion to give a non-IPI instruction to the jury that is "simple, brief, impartial and free from argument." Hudson, 222 Ill. 2d at 399, 856 N.E.2d at 1082; 210 Ill. 2d R. 451(a).

In this case, it is undisputed that there is no applicable IPI instruction governing either simple or aggravated possession of stolen firearms. Accordingly, at the jury instruction conference, the State tendered a non-IPI instruction for possession of a stolen firearm, which defense counsel recognized "certainly contains the elements that are involved in the indictment." Defense counsel also recognized that the State offered a non-IPI instruction for aggravated possession of stolen firearms and stated, "I don't have any objection. I believe it states the elements." The court then provided those instructions to the jury.

The circuit court did not err in doing so. The non-IPI instructions given in this case accurately set forth all of the elements of the crimes of possession of a stolen firearm and aggravated possession of stolen firearms. The instructions were simple, brief, impartial and free from argument. The circuit court had no duty to *sua sponte* give the jury IPI instructions that are analogous to a different offense, especially where defense counsel presented no such instructions to the court. See People v. Curry, 296 Ill. App. 3d 559, 567, 694 N.E.2d 630, 637 (1998), citing People v. Layhew, 139 Ill. 2d 476, 485-86, 564 N.E.2d 1232, 1236 (1990). Therefore, the court did not abuse its discretion where it provided adequate non-IPI instructions to the jury rather

17

than providing IPI instructions for an arguably analogous offense. As there was no error here, we need not address the issue further.

Alternatively, defendant argues that his trial counsel was ineffective for failing to offer IPI Instructions 23.35 and 23.36 relating to possession of a stolen motor vehicle. To prevail on a claim of ineffective assistance of counsel, defendant must satisfy the two requirements set forth in Strickland v. Washington, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984). See also People v. Albanese, 104 Ill. 2d 504, 473 N.E.2d 1246 (1984). Under Strickland, defendant must show (1) that counsel made an error so serious that his conduct fell below an objective standard of reasonableness; and (2) there is a reasonable probability that but for counsel's error, the result of the trial would have been different. Strickland, 466 U.S. at 687-88, 80 L. Ed. 2d at 693-94, 104 S. Ct. at 2064-65; People v. Gill, 264 Ill. App. 3d 451, 460, 637 N.E.2d 1030, 1037 (1992).

Defense counsel's failure to submit a proposed jury instruction does not create a presumption of ineffective assistance of counsel. Gill, 264 Ill. App. 3d at 460, 637 N.E.2d at 1037. Rather, defendant bears the burden of showing that the proposed instructions would have been given to the jury and that the outcome at trial would have been different as a result. Gill, 264 Ill. App. 3d at 460, 637 N.E.2d at 1037. We must evaluate the reasonableness of counsel's conduct from counsel's perspective in light of the totality of the circumstances. Gill, 264 Ill. App. 3d at 460, 637 N.E.2d at 1037.

Here, the non-IPI instructions given to the jury were nearly identical in form to Instruction 23.36. Thus, in effect, defendant contends that trial counsel was ineffective for failing to make the novel legal argument that the court should also provide the "Definition of

Possession of Stolen or Converted Vehicle," pursuant to Instruction 23.35, as well as the definitions of "stolen property" and "theft," pursuant to its Committee Notes.

Counsel's failure to make that argument did not prejudice defendant because that argument likely would have failed. Unlike the possession offenses at issue in this case, possession of a stolen motor vehicle requires proof that the defendant intended to permanently deprive the owner of possession of the car. People v. Henry, 203 Ill. App. 3d 278, 280, 560 N.E.2d 1205, 1206 (1990). It is that additional element that gave rise to the IPI Committee's instruction to provide the jury with definitions for "stolen property" and "theft." See Illinois Pattern Jury Instructions, Criminal, No. 23.35 and Committee Notes (4th ed. 2000). The instant possession offenses do not require such proof of actual theft or intent to permanently deprive the owner of possession of the firearms. Giving a jury inapplicable instructions would have caused confusion; thus, it is unlikely that the court would have given Instruction 23.35. See People v. Mohr, 228 Ill. 2d 53, 67-68, 885 N.E.2d 1019, 1027 (2008). Therefore, we reject defendant's contention that trial counsel was ineffective for failing to submit these jury instructions in the court below.

For all of the foregoing reasons, we affirm the judgment of the circuit court.

QUINN, P.J., and GREIMAN, J., concur.

**THE PEOPLE OF THE STATE OF ILLINOIS,**

     **Plaintiff-Appellee,**

     **v.**

**HAROLD JENKINS,**

     **Defendant-Appellant.**

**No. 1-06-1939**

**Appellate Court of Illinois**
**First District, Third Division**

**Filed: June 30, 2007**

**JUSTICE THEIS delivered the opinion of the court.**

**Quinn, P.J., and Greiman, J., concur.**

**Appeal from the Circuit Court of Cook County**
**Honorable Lawrence P. Fox, Judge Presiding**

| | |
|---|---|
| For PLAINTIFF-APPELLEE, | Richard A. Devine, State's Attorney<br>James E. Fitzgerald, Assistant State's Attorney<br>Noah Montague, Assistant State's Attorney<br>Angela Zak Ordway, Assistant State's Attorney<br>Richard J. Daley Center, Room 309<br>Chicago, IL 60602 |
| For DEFENDANT-APPELLANT, | Patricia Unsinn, State Appellate Defender<br>Heidi Linn Lambros, Assistant Appellate Defender<br>203 North LaSalle Street<br>24th Floor<br>Chicago, IL 60601 |